**THE LAW OFFICES OF**
**KENNETH A. REYNOLDS, ESQ., P.C.**
105 Maxess Road, Suite 124
Melville, New York 11747
(631) 994-2220
*Counsel for the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
In re:                                                                    Chapter 11

      CORTLAND HABITATS, INC.,                    Case No. 17-71523
      COLLEGE HILL REALTY, LLC,                      Case No. 17-71524
      CAMPUS HABITATS, LLC,                          Case No. 17-71525
      COMMITTED 2 CORTLAND, LLC,                Case No. 17-71526

                   Debtors.                    Jointly Administered.
----------------------------------------------------------------X

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF
## CORTLAND HABITATS, INC. AND COLLEGE HILL REALTY, LLC

Dated: Jericho, New York
      April 9, 2019

                                Kenneth A. Reynolds, Esq. (KR3808)
                                The Law Offices of Kenneth A.
                                Reynolds, Esq., P.C.
                                105 Maxess Road, Suite 124
                                Melville, New York 11747
                                Telephone: (631) 994-2220
                                KReynolds@kareynoldslaw.com

## <u>PLAN OF REORGANIZATION</u>

Cortland Habitats, Inc. and College Hill Realty, LLC, the debtors and debtors-in-possession (Cortland Habitats, Inc. and College Hill Realty, LLC shall be collectively referred to as the "Operating Debtors"; Campus Habitats, LLC and Committed 2 Cortland, LLC are non-operational and shall be referred to as the "Non-Operating Debtors". Both the Operating Debtors and Non-Operating Debtors shall collectively be referred to as the "Debtors") hereby submit the following First Amended Joint Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the First Amended Disclosure Statement of the Debtors (the "Disclosure Statement") for a discussion of Debtors' history, business, results of operations, historical financial information, projections, and properties, and for a summary and analysis of the Plan.

Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of the Debtors or any other party in interest and the Plan is subject to approval of the Bankruptcy Court and other customary conditions.

**ALL CREDITORS IN IMPAIRED CLASSES SHOULD REVIEW THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**THE DEBTORS BELIEVE THE TREATMENT OF CREDITORS THAT ARE IMPAIRED UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY FOR SUCH CREDITORS THAN WOULD BE AVAILABLE UNDER ANY ALTERNATIVE PLAN OR IN A CHAPTER 7 LIQUIDATION. IN THIS REGARD, THE FOLLOWING IMPORTANT BENEFITS ARE NOTED:**

**THE PLAN OFFERS UNSECURED CREDITORS THE OPPORTUNITY TO OBTAIN A DISTRIBUTION OF EIGHT PERCENT (8%) OF THEIR ALLOWED CLAIMS. CONVERSELY, AS NOTED IN DEBTORS' LIQUIDATION ANALYSIS, NO DISTRIBUTIONS TO UNSECURED CREDITORS WOULD BE AVAILABLE IN A CHAPTER 7 LIQUIDATION OF THE DEBTORS.**

**ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTEREST OF IMPAIRED CREDITORS AND RECOMMENDS THAT ALL SUCH CREDITORS VOTE TO ACCEPT THE PLAN.**

The Operating Debtors, by and through their attorneys, The Law Offices of Kenneth A. Reynolds, Esq., P.C.[1], pursuant to 11 U.S.C. § 1121 et. seq., proposes the following Plan:

## ARTICLE 1

## DEFINITIONS

For the purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the meanings set forth in this section and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article 1, and any term used in this Plan which is not defined below, but which is defined in the Bankruptcy Code, shall have the meaning designated in the Bankruptcy Code:

1.1 "**Administrative Bar Date**" means the last day in which creditors and parties-in-interest could have filed a proof of claim against the Debtors for administrative expenses, which date was July 5, 2017.

1.2 "**Administrative Claim**" means a Claim under Sections 330, 331 or 503(b) of the Bankruptcy Code that is entitled to priority treatment under Section 507(a)(1) of the Bankruptcy Code.

1.3 "**Administrative Period**" means the period beginning on the Petition Date and ending on the Confirmation Date.

---

[1] The Court entered an order approving the substitution of counsel for the Debtors on April 4, 2019 under Docket No. 187.

1.4    "**Adversary Proceeding**" means any and all actions previously commenced, or to be commenced, by the Debtors to recover money or property on behalf of the Debtors' Estate.

1.5    "**Allowed Administrative Claim**" means an Allowed Claim that is entitled to priority as an Administrative Claim.

1.6    "**Allowed Claim**" means: (1) any Claim listed on Debtors' Schedules filed in connection with their Reorganization Case which is not designated as unliquidated, contingent or disputed and/or, (2) any Claim against the Debtors which is designated as an Allowed Claim under the Plan and/or reduced to writing, consented to by the Debtors and liquidated in amount, which writing has been approved by a Final Order.

1.7    "**Allowed Unsecured Claim**" means any Unsecured Claim that is an Allowed Claim.

1.8    "**Amended Settlement Agreement**" means the second amended and restated settlement between the Debtors and Visions Federal Credit Union approved by Court Order on November 28, 2018, and docketed at number 167 of the Cortland Habitats Inc. case (case no. 17-71523).

1.9    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. § 101, et seq.

1.10    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York, located at the Central Islip Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722, having jurisdiction over the Debtors' Reorganization Case, or any such other Court as may hereafter exercise primary jurisdiction over the Debtors' Reorganization Case.

1.11    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States and prescribed by the Supreme Court of the United States, effective August 1, 1983, in accordance with the provisions of 28 U.S.C. § 2075, and all amendments thereto.

1.12    "**Bar Date**" means the last day in which creditors and parties-in-interest can file a proof of claim against the Debtors, July 5, 2017.

1.13    "**Chapter 11**" means the Chapter 11 reorganization cases of the Debtors, commenced on March 15, 2017.

1.14    "**Claim**" as defined in Section 101(5) of the Bankruptcy Code means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.15    "**Claimant**" means the holder of a Claim.

1.16    "**Claims**" means any group of Claims as classified in Article 2 of this Plan.

1.17    "**Class**" means each group or category of Claims as classified herein.

1.18    "**Closing Date**" means the date that Operating Debtors complete all Plan payments and a final decree is entered by the Court.

1.19    "**Confirmation**" means entry of a Final Order confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

1.20    "**Confirmation Date**" means the date the Confirmation Order is entered on the Bankruptcy Court docket.

1.21    "**Confirmation Hearing**" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to Sections 1128(a) and 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

1.22    "**Confirmation Order**" means the order issued and entered confirming the Plan, pursuant to Section 1129 of the Bankruptcy Code.

1.23    "**Consummation of the Plan**" means the period by which the Operating Debtors commence distributions under the Plan.

1.24    "**Creditor**s" means all entities and/or individuals holding Claims against the Debtors' estate.

1.25    "**Cure Period**" means the period of thirty (30) days the Debtors have to cure any default in payments required under the Plan after a Claimant provides written notice to the Debtors and its attorneys of the default.

1.26    "**Debtor**"   **or "Debtors"** means Cortland Habitats, Inc., College Hill Realty, LLC, Campus Habitats, LLC and/or Committed 2 Cortland, LLC.

1.27    "**Disclosure Statement**" means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code filed by the Debtors in connection with the Reorganization Case, and all Exhibits in connection therewith and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.28    "**Disputed Claim**" means any Claim designated as disputed, contingent or unliquidated in the Debtors' Schedules filed in connection with its Reorganization Case,

or any Claim against which an objection to the allowance thereof has been interposed and as to which such objection a Final Order has not been entered or any Claim against which the period for bringing such objection as provided hereunder has not expired.

1.29    "**Disputed Claim Holder**" means the holder of a Disputed Claim.

1.30    "**Effective Date**" means the date following the day upon which the order of Confirmation has become a Final Order.

1.31    "**Estate**" means the estate created in the Reorganization Case pursuant to Section 541 of the Bankruptcy Code.

1.32    "**Exhibits**" means the exhibits filed in support of this Plan.

1.33    "**Extension Period**" means the additional ninety (90) days that the Cure Period shall be extended in the event of any act of terrorism or God which adversely impacts upon the ability of the Operating Debtors or Reorganized Debtors to satisfy their payment obligation under the Plan.

1.34    "**Final Order**" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Operating Debtors' Reorganization Case, which order or judgment has not been reversed, stayed, modified or amended.

1.35    "**Holder**" means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.36    "**Non-Operating Debtors**" means Campus Habitats, LLC and Committed 2 Cortland, LLC.

1.37    "**Operating Debtors**" means Cortland Habitats, Inc. and College Hill Realty, LLC.

1.38    "**Person**" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

1.39    "**Petition Date**" means March 15, 2017, the date of the commencement of the Debtors' respective Reorganization Cases.

1.40    "**Plan**" means this document entitled "First Amended Joint Plan of Reorganization" dated April 9, 2019, and any Exhibits annexed hereto, and any Plan Supplement delivered in connection herewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.41    "**Plan Proponent**" means the Operating Debtors.

1.42    "**Plan Supplement**" means, if any, such exhibits, documents, lists or schedules not filed with the Plan but as may be filed in connection therewith within ten (10) days of the Confirmation Hearing.

1.43    "**Post-Confirmation Expenses**" means all reasonable fees, expenses and disbursements of Professional Persons incurred after the Confirmation Date.

1.44    "**Professional Fees**" means all allowances of compensation and reimbursement of expenses Allowed, or to be allowed, pursuant to Sections 330 or 331 of the Bankruptcy Code, to any Professional Person retained pursuant to Section 327 of the Bankruptcy Code.

1.45    "**Professional Person**" means The Law Offices of Kenneth A. Reynolds, Esq., P.C. (counsel for the Debtors), which have sought or may seek to be compensated pursuant to Sections 326, 327, 328, 330, 331, or 1103 of the Bankruptcy Code.

1.46    "**Proof of Claim**" means a written statement setting forth a Claim against the Debtors.

1.47    "**Released Parties**" means any of the Debtors and its agents, advisors, attorneys, and representatives.

1.48    "**Reorganization Case**" means the bankruptcy cases of the Debtors jointly administered and designated as Main Case No. 17-71523 (AST) (the other affiliated cases are designated by Case Nos. 17-71524, 17-71525, and 17-71526) commenced on the Petition Date by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code and ending upon the entry of a Final Order closing the Debtors' cases.

1.49    "**Reorganized Debtors**" means the Operating Debtors on and after the Effective Date.

1.50    "**Schedules**" mean the Chapter 11 schedules filed with the Bankruptcy Court on May 26, 2016, as may be amended.

1.51    "**Unclaimed Distributions**" means those funds allocated under the Plan for payment to any holders of Allowed Claims which holders, after due diligence, the Debtors or their attorneys are unable to locate.

1.52    "**Unsecured Claim**" means any Claim which does not qualify as an Administrative Claim, Priority Claim, or Secured Claim.

1.53    "**Unsecured Creditor**" means the holder of an Unsecured Claim.

A.    **Interpretation, Rules of Construction, Computation of Time and Choice of Law**

1.    The provisions of the Plan shall control over any descriptions contained in the Disclosure Statement. Where the Plan refers to "any contract, instrument, or other agreement or document created in connection with the Plan," the provisions of such contract, instrument, or other agreement or document shall control over any inconsistency with the terms of the Plan, and the Plan will be interpreted to avoid any inconsistencies with the provisions of such contract, instrument, or other agreement or document.

2.    Any term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.

3.    Without limiting the foregoing, the rules of construction set forth in Bankruptcy Code § 102 shall apply. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the Exhibits to the Disclosure Statement except to the extent expressly so stated in the Disclosure Statement.

4.    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection, or clause contained in the Plan.

5.    Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to Articles, Sections and Exhibits of or to the Plan.

6.      Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified, or supplemented as of the Effective Date.

7.      Captions and reference to Articles and Sections in the Plan are inserted for convenience only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

8.      Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

9.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.     All Exhibits to the Disclosure Statement are incorporated into the Plan by reference, and shall be deemed to be included in the Plan, regardless of when filed.

## ARTICLE II

## CLASSIFICATION OF CLAIMS, INTERESTS AND STATUTORY FEES

2.1     The Plan divides all Claims and Interests into the following five (5) Classes, plus Administrative Claims, Priority Claims, and Statutory Fees.

2.2     Administrative Claims consist of the Allowed Claims of Debtors' duly retained professionals and any other administrative expenses allowed under Section 503 of the Bankruptcy Code. Administrative Claims will include the fees and expenses of Debtors' counsel, The Law Offices of Kenneth A. Reynolds, Esq., P.C., in the approximate amount of Fifty-Five Thousand and 00/100 ($55,000.00) Dollars through confirmation, exclusive of a pre-petition retainer. McBreen & Kopko received a retainer

prior to the Petition Date in the amount of Fifty Thousand and 00/100 ($50,000.00) Dollars from Marc Grodinsky.

The claims of Debtors' professionals shall be subject to final fee applications pursuant to Bankruptcy Code Section 330 and orders of the Court approving the fees and expenses as sought by the applications.

The Debtors estimate the total necessary to pay Administrative Claims on the Effective Date equals not less than Fifty-Five Thousand and 00/100 ($55,000.00) Dollars.

In order to confirm the Plan, it is necessary for the Debtors to satisfy the Administrative Claims in full at or before Confirmation or have the holder of each Administrative Claim agree to different treatment.

2.3     In addition to Administrative Claims there exists five (5) Allowed Priority Claims: (a) the New York State Department of Taxation and Finance with a priority claim in the amount of Fifty-Seven and 59/100 ($57.59) Dollars for the tax period ending December 31, 2015 and December 31, 2016; (b) New York State Department of Labor, Unemployment Division with a priority claim in the amount of Four Hundred Fifty-Seven and 63/100 ($457.63) Dollars for the tax period of October 1, 2015 through and including December 31, 2015; (c) Internal Revenue Service with a priority claim in the amount of Seven Thousand Seven Hundred Twenty-Three and 62/100 ($7,723.62) Dollars for the tax periods ending December 31, 2014 and December 31, 2015; (d) New York State Attorney General with a priority claim in the amount of Fifty-Three Thousand Six Hundred Twenty and 00/100 ($53,620.00) Dollars; and (e) New York State Workers' Compensation Board with a priority claim in the amount of Ten Thousand Five Hundred and 00/100 ($10,500.00) Dollars.

2.4     Class I consists of the secured claim of Visions Federal Credit Union in the aggregate amount of Two Million Three Hundred Sixty-Nine Thousand Five Hundred Twenty-Nine and 44/100 ($2,369,529.44) Dollars[2] pursuant to the Amended Settlement Agreement between the Debtors and VFCU and the amended and restated promissory note executed by the parties.

2.5     Class II consists of the secured claim of Saratoga National Bank and Trust Company in the amount of Twenty-Four Thousand Six Hundred Six and 97/100 ($24,606.97) Dollars.

2.6     Class III consists of the secured claim of Firstar Investors, Inc. in the amount of Three Hundred Twenty-Five Thousand and 23/100 ($325,381.23) Dollars.

2.7     Class IV consists of the allowed claims of the general unsecured creditors. The amount of general unsecured claims totals approximately One Million One Hundred Eighty-Six Thousand Two Hundred Sixty-Nine and 50/100 ($1,186,269.50) Dollars, subject to significant reduction by claim objections against numerous creditors' claims[3].

2.8     Class V consists of the interests of the Debtors' insider shareholder, Jeff D. Grodinsky. The claims of the Debtors' insider shall be subordinated to the claims of the general unsecured creditors and will receive no distribution under the Plan, however, the insider shall retain his equity interests in the Debtors to the same extent, validity and priority as existed pre-petition. The Debtors' insider is impaired, but even though he is the Plan proponent, he is deemed to have voted against the Plan.

---

[2] Pursuant to the Amended Settlement Agreement reached between the Debtors and VFCU, VFCU holds an allowed secured claim against each of the Debtors in the amount of $2,369,529.44, and an allowed unsecured claim against each of the Debtors in the amount of $723,192.92.
[3] This amount is inclusive of the deficiency claim of VFCU in the amount of $723,192.92, which will not be objected to or reduced, and the claim of Firstar Investors, Inc. in the amount of $325,381.23, which the Operating Debtors will seek to reclassify as a general unsecured claim.

2.9    In addition to Administrative, Priority, secured and general unsecured claims, there exists statutory fees due and payable by the Debtor to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). All outstanding United States Trustee's quarterly fees shall be paid by the Operating Debtors on the Effective Date and quarterly thereafter until the case(s) are dismissed, converted or  together with any applicable interest thereon.

## ARTICLE III

## TREATMENT OF CLASSES THAT ARE NOT
## IMPAIRED UNDER THE PLAN

The following Claims shall not be impaired under this Plan.

3.1    **Administrative Claims**

Administrative Claims consist of the Allowed Claims of the Debtors' duly retained professionals and any other administrative expenses allowed under Section 503 of the Bankruptcy Code. Administrative Claims will include the fees and expenses of Debtors' counsel, The Law Offices of Kenneth A. Reynolds, Esq., P.C., in the approximate amount of Fifty-Five Thousand and 00/100 ($55,000.00) Dollars through confirmation, exclusive of a pre-petition retainer. McBreen & Kopko received a retainer prior to the Petition Date in the amount of Fifty Thousand and 00/100 ($50,000.00) Dollars from Marc Grodinsky. The Debtors and counsel have agreed that the Debtors shall pay the Administrative Claim in full upon the Effective Date.

The claims of Debtors' professionals shall be subject to final fee applications pursuant to Bankruptcy Code Section 330 and orders of the Court approving the fees and expenses as sought by the applications.

The Debtors estimate the total necessary to pay Administrative Claims on the Effective Date equals not less than Fifty-Five Thousand and 00/100 ($55,000.00) Dollars.

In order to confirm the Plan, it is necessary for the Debtors to satisfy the Administrative Claims in full at or before Confirmation or have the holder of each Administrative Claim agree to different treatment.

3.2    **Priority Claims**

The five (5) Allowed Priority Claims shall be treated as follows:

(a) the New York State Department of Taxation and Finance with a deminimus priority claim in the amount of Fifty-Seven and 59/100 ($57.59) Dollars for the tax periods ending December 31, 2015 and December 31, 2016 will be paid in full on the Effective Date of the Plan for convenience purposes;

(b) New York State Department of Labor, Unemployment Division with a deminimus priority claim in the amount of Four Hundred Fifty-Seven and 63/100 ($457.63) Dollars for the tax period of October 1, 2015 through and including December 31, 2015 will be paid in full on the Effective Date of the Plan for convenience purposes;

(c) Internal Revenue Service with a priority claim in the amount of Seven Thousand Seven Hundred Twenty-Three and 62/100 ($7,723.62) Dollars for the tax periods ending December 31, 2014 and December 31, 2015 shall be paid in full over thirty-six (36) months in equal monthly amounts of $214.64, together with a current rate of interest;

(d) New York State Attorney General with a priority claim in the amount of Forty-Two Thousand Six Hundred Twenty and 00/100 ($53,620.00) Dollars

shall be paid in full over thirty-six (36) months in equal monthly amounts of $1,489.44; and

(e) New York State Workers' Compensation Board with a scheduled priority claim in the amount of Ten Thousand Five Hundred and 00/100 ($10,500.00) Dollars shall receive no distribution under the Plan. To the extent a claim is filed, the Debtors shall reserve the amount of the priority claim, however, the Debtors anticipates objecting to said claim.

3.3     **Statutory Fees**

In addition to Administrative, Priority, secured and general unsecured claims, there exists statutory fees due and payable by the Debtor to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6). All outstanding United States Trustee's quarterly fees shall be paid by the Operating Debtors on the Effective Date and quarterly thereafter until the case(s) are dismissed, converted or  together with any applicable interest thereon.

## ARTICLE IV

## TREATMENT OF CLASSES THAT ARE
## IMPAIRED UNDER THE PLAN

4.1     **Class I Claim (Secured Claim of Visions Federal Credit Union)**

Class I consists of the secured claim of Visions Federal Credit Union in the aggregate amount of Two Million Four Hundred Seventy-Four Thousand Eight Hundred Seventy-Three and 29/100 ($2,474,873.29) Dollars. Pursuant to the Amended Settlement Agreement between the Debtors and VFCU, the amount due to VFCU under the amended and restated promissory note is now $2,369,528.44 for the Operating Debtors. VFCU shall be paid pursuant to the terms and conditions of the Amended Settlement Agreement

between the parties as well as the amended restated promissory note beginning April, 2019. VFCU shall retain a lien against the Operating Debtors' Properties.

The Class I creditor is impaired and is entitled to vote on the Plan.

### 4.2      Class II Claim (Secured Claim of Saratoga National Bank)

Class II consists of the secured claim of Saratoga National Bank and Trust Company ("Saratoga") in the amount of Twenty-Four Thousand Six Hundred Six and 97/100 ($24,606.97) Dollars collateralized against a truck owned by Debtor Cortland Habitats, Inc. The Operating Debtors shall continue to make monthly payments pursuant to the terms of the finance agreement and Saratoga shall retain its lien against the Debtors' vehicle.

The Class II creditor is not impaired and not entitled to vote on the Plan.

### 4.3      Class III Claim (Secured Claim of Firstar Investors, Inc.)

Class III consists of the secured judgment lien claim of Firstar Investors, Inc. against Cortland Habitats, Inc., which properties are fully encumbered by the $2,369,528.44 mortgage claim of VFCU, in the amount of Three Hundred Twenty-Five Thousand and 23/100 ($325,381.23) Dollars. Debtor Cortland Habitats, Inc. is a co-debtor on this loan and the Operating Debtors will file a motion seeking to have the claim reclassified as a general unsecured claim.

The Class III creditor is impaired and entitled to vote on the Plan.

### 4.4      Class IV Claims (General Unsecured Claims)

Class IV consists of the claims of general unsecured creditors in the Debtors' cases. The amount of general unsecured claims filed and/or scheduled is approximately One Million One Hundred Eighty-one Thousand Two Hundred Sixty-one and 08/100

($1,181,261.08) Dollars[4]. The claims of general unsecured creditors shall be paid pro-rata distributions of not less than eight percent (8%) on their allowed claims after payment of allowed administrative and priority tax claims on a monthly basis for thirty-six months.

The Operating Debtors will seek to have the following claims either reduced or expunged in their entirety based on numerous factors such as duplicative, unsubstantiated, untimely, and disputed claims:

- All claims filed by students in the Cortland Habitats, Inc. case, which claims have been included in the Priority Claim of the New York State Attorney General and are deemed duplicative (Claim Nos. 4, 5, 7, 8, 9, 11, 12, 13, 16, 18, 32, 33, and 34) totaling $5,980.00.

- Claim number 29 filed by Holmes, King & Kallquist in the amount of $53,002.50;

- Claim number 28 filed by Meldrims Paint in the amount of $7,081.66;

- Claim number 25 filed by Vincent Lentini, Esq. in the amount of $75,213.00;

- Claim number 3 filed by Vincent Lentini, Esq.in the College Hill Realty, LLC case in the amount of $75,213.00;

- Claim number 6 filed by Kevin Penney in the College Hill Realty, LLC case in the amount of $36,273.91;

- Claim number 2 filed by Vincent Lentini, Esq., in the Campus Habitats, LLC case in the amount of $75,213.00;

---

[4] This amount is inclusive of the Deficiency Claim but exclusive of certain claims listed below in which the Operating Debtors seek to have reduced or expunged.

- Claim number 4 filed by Kevin Penney in the Campus Habitats, LLC case in the amount of $36,273.91;

- Claim number 6 filed by Vincent Lentini, Esq. in the Committed 2 Cortland, LLC case in the amount of $75,213.00, and

- And certain scheduled debts of all of the Debtors that were scheduled for informational purposes; no claims were filed on behalf of such creditors, and are deemed to be disputed by the Debtors, totaling approximately $145,918.86.

The Class IV creditors are impaired and are entitled to vote on the Plan.

4.5    **Class V Claims (Shareholder)**

Class V consists of the interests of the Debtors' insider shareholder, Jeff D. Grodinsky. The claims of the Debtors' insider shall be subordinated to the claims of the general unsecured creditors and will receive no distribution under the Plan, however, the insider shall retain this equity interests in the Debtors.

The Debtors' insider is the Plan proponent whose vote shall not be counted toward confirmation unless it is a no vote.

**ARTICLE V**

**MEANS FOR EXECUTION OF THE PLAN**

5.1    The Plan will be financed from the following: (i) approximately $95,000.00 from Visions Federal Credit Union from rents received on the Debtors' rental properties during lender, Visions Federal Credit Union, management pursuant to the terms of the Amended Settlement Agreement; and (ii) derived from the operation of

Debtors' business and rental properties described in detail in Debtors' projections annexed to the Disclosure Statement.

5.2     Following the Effective Date, the Operating Debtors shall retain the right to issue new shares of stock, merge, consolidate, dissolve, or take any other action in accordance with applicable non-bankruptcy law.

## ARTICLE VI

### PROVISIONS FOR REJECTION OF EXECUTORY CONTRACTS

6.1     All executory contracts or interests in unexpired leases involving the Debtors or Debtors-in-Possession for which a rejection motion is not filed prior to the Confirmation hearing shall be deemed to have been assumed by the Operating Debtors on the Effective Date, in accordance with Section 365 of the Code. A proof of claim for any claim arising from the rejection of an executory contract or unexpired lease shall be filed within thirty (30) days subsequent to the date that an order is entered rejecting the executory contract and the claim arising from the rejection of an executory contract for which a proof of claim is not filed within such time period shall be disallowed in its entirety and forever barred.

## ARTICLE VII

### DISTRIBUTION UNDER THE PLAN

7.1     **The Disbursing Agent(s)**

The reorganized Operating Debtors shall act as Disbursing Agent(s) under the Plan.

7.2.    **Cash Payments**

Cash payments made pursuant to the Plan will be made or commence on the Effective Date and continue thereafter until Plan obligations are satisfied in U.S. Dollars by checks drawn on a banking institution that is an authorized depository in the Eastern District of New York selected by the Operating Debtors or by wire transfer from a banking institution that is an authorized depository in the Eastern District of New York, at the option of the Operating Debtors.

7.3    **Transmittal of Distributions**

All distributions shall be deemed made at the time such distribution is deposited in the United States mail, postage prepaid. Except as otherwise agreed with the holder of an Allowed Claim or Allowed Interest such distribution shall be distributed by mail to (i) the latest mailing address filed of record for the party entitled thereto or to a holder of a power of attorney designated by such holder to receive such distributions or (ii) if no such mailing address has been so filed, the mailing address reflected upon the filed Schedules of Assets and Liabilities or in the Operating Debtors' books and records.

7.4    **Undeliverable Distributions**

If any distribution is returned to a Disbursing Agent as undeliverable, no further distributions shall be made to the holder of the Allowed Claim or Allowed Interest on which such distribution was made unless and until the Operating Debtors are notified in writing of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Operating Debtors until such time as a distribution becomes deliverable or is deemed canceled (as hereinafter provided). Any unclaimed distribution held by the Operating Debtors shall be accounted for separately, but the Disbursing

Agent shall be under no duty to invest any such unclaimed distribution in any manner. Any holder of an Allowed Claim or Allowed Interest that does not present a Claim for an undeliverable distribution within one hundred eighty (180) days after the date upon which a distribution is first made available to such holder shall have its right to such distribution discharged after service by the Operating Debtors with a waiver notice detailing the creditors name and distribution amount, and shall be forever barred from asserting any such Claim or Interest against the Debtors or their property or against any other Person, including the Debtor(s). All unclaimed or undistributed distributions shall, pursuant to Bankruptcy Code Section 347 (b), be the property of the Operating Debtors and shall be treated as determined by the Operating Debtors in its sole and absolute discretion.

7.5    **Fractional Cents**

Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would be otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

7.6    **Payments of less than Ten Dollars**

If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than ten dollars ($10.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Reorganized Debtor shall not be required to make such payment.

# ARTICLE VIII

## DEFAULT

8.1    The Operating Debtors shall be deemed in default if it fails to make timely payments to any creditors as provided for in the Plan and the Operating Debtors and each creditor shall abide by the following:

(1)    Upon written receipt from any creditor of notice of default relating to payment, the Operating Debtors shall have a period of thirty (30) days from receipt of such notice to cure such default, during such 30-day period, the creditors shall take no action to terminate the Operating Debtors' Plan. If such default is cured by the Operating Debtors within the 30-day period, the Plan shall continue in full force and effect. Any notices of default under the Plan shall be served upon the Operating Debtors and Operating Debtors' attorney.

(2)    If full payment of the default amount is not paid by the Operating Debtors within thirty (30) days of such demand, the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code, and the automatic stay of 11 U.S.C. 362(a) is lifted for this purpose without further order of the court.

(3) If Debtors fail to make any post-confirmation deposits, fails to pay any post-confirmation tax liability or fails to file post-confirmation tax returns by the due date of the tax return, then the United States may declare a default of the Plan.

(4) If the Operating Debtors fail to comply with the terms of the Amended Settlement Agreement or otherwise default under the Amended Settlement Agreement, it shall be deemed an event of default under the Plan. In the event of such a default, VFCU

shall serve a written notice of default upon the Operating Debtors and Operating Debtors' attorney, and the Operating Debtors shall have a period of thirty (30) days from receipt of such notice to cure such default.

**ARTICLE IX**

**<u>DISCHARGE AND INJUNCTION</u>**

9.1    Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court that, except as otherwise provided in the Plan or in agreements or Orders entered in connection therewith, on and after the Effective Date, provided the Operating Debtors have completed all Plan payments under the Plan;

a.    the rights afforded in the Plan, and the treatment of all Claims and Interests thereunder: (i) shall be in exchange for, and in complete satisfaction, discharge, and release of all Claims, (including without limitation, all Administrative Claims, Secured Claims, Priority Claims, other Priority Claims, and Unsecured Claims (including any interest accrued on such Claims from and after the Petition Date)), against the Operating Debtors, or any of the Operating Debtors' assets or properties and any liability thereunder, and (ii) shall terminate all Interests of any nature whatsoever;

b.    all substantive rights or obligations of the Operating Debtors under any Interests shall be terminated, and the Operating Debtors shall be deemed discharged and released to the fullest extent permitted by Bankruptcy Code Section 1141 from all Claims or Interests that arose prior to the Effective Date against the Operating Debtors or its property or assets, (including without limitation, all Administrative Claims, Secured Claims, Priority Claims, other Priority Claims, and Unsecured Claims (including any interest accrued on such Claims from and after the Petition Date)), and all debts of the

kind specified in Bankruptcy Code Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. This discharge and release shall be effective in each case whether or not: (i) a proof of claim or proof of interest based on such Claim, Administrative Claim, or Interest is filed or deemed filed pursuant to Bankruptcy Code Section 501, (ii) a Claim, Administrative Claim is Allowed pursuant to the Bankruptcy Code, or (iii) the holder of a Claim, Administrative Claim has accepted the Plan;

c.      all Persons shall be permanently enjoined by Bankruptcy Code Section 524 from asserting against the Operating Debtors, its successors, assets or properties, any other further Claims, Administrative Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. The discharge shall void any judgment against the Operating Debtors at any time obtained to the extent that it relates to a Claim, Administrative Claim, or Interest that has been discharged or terminated;

d.      all Persons who have held, currently hold, or may hold a Claim or Administrative Claim discharged or terminated pursuant to the terms of the Plan shall be permanently enjoined by Bankruptcy Code Section 524 from taking any of the following actions on account of any such discharged Claim or terminated Interest: (i) commencing or continuing in any manner any action or other proceeding against the Operating Debtors, its successors, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Operating Debtors, their successors, assets, or properties; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Operating Debtors, their successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any

obligation due to the Operating Debtors, their successors, assets, or properties; and (v) commencing or continuing any action, in any manner or place, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Person violating such injunction may be liable for actual damages, including costs and attorneys' fees and, in appropriate circumstances, punitive damages; and

        e.       all Persons who have held, currently hold, or may hold a Claim, Administrative Claim, or Interest discharged or terminated pursuant to the terms of the Plan shall be permanently enjoined by Bankruptcy Code Section 524 from commencing or continuing in any manner any action or other proceeding against any party on account of a Claim or cause of action that was property of the estate, including, without limitation, any derivative Claims capable of being brought on behalf of the Operating Debtors, and all such Claims and causes of action shall remain exclusively vested in the Operating Debtors to the maximum extent such Claims and cases of action were vested in the Operating Debtors in Possession. The Plan shall be binding upon and govern the acts of all Persons including, without limitation, all holders of Claims, Administrative Claims, and Interests, all filing agents or officers, title agents or companies, recorders, registrars, administrative agencies, agencies or officials thereof, secretaries of state, and all other Persons who may be required by law, the duties of their office, or contract to accept, file, register, record, or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the assets of the Operating Debtors.

## ARTICLE X

## REVESTING OF PROPERTY OF THE ESTATE AND RELEASE OF LIENS

10.1    Except as otherwise provided in the Plan, any contract, instrument, or other agreement or document created in connection with the Plan, or the Confirmation Order, on the Effective Date to the extent the Operating Debtors have not defaulted under the Plan, all property of the estate, wherever situated, shall be revested in the Operating Debtors free and clear of all Claims, mortgages, deeds of trust, liens, security interests, encumbrances, and other interests of any Person, and the Operating Debtors may thereafter operate its business and may use, acquire, and dispose of property and compromise or settle any Claims or Interests without the supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Eastern District of New York. From and after the Effective Date, the Operating Debtors may use, acquire, and dispose of property without the supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, other than those restrictions expressly imposed by the Plan, any contract, instrument, or other agreement or document created in connection with the Plan, or the Confirmation Order.

10.2    Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against property of the Estate shall be released, and all right, title, and interest of any holder of such mortgages,

deeds of trust, liens, or other security interests shall revert to the Operating Debtors and its successors and assigns.

10.3    Except as otherwise provided in the Plan, agreements entered into in connection therewith, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Operating Debtors may, upon a three (3) day written notice to the affected party, pursuant to Bankruptcy Code § 553 or applicable non-bankruptcy law, set off against any Allowed Claim (before any distribution is made on account of such Claim) any and all of the Claims, rights and causes of action of any nature that the Operating Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Operating Debtors of any such Claims, rights, and causes of action that the Debtor may possess against such holder. To the extent the Operating Debtors fail to setoff against a third party and seeks to collect a Claim from such third party after a distribution to such third party pursuant to the Plan on account of its Allowed Claim, the Operating Debtors shall be entitled to full recovery on its Claim against such third party.

10.4    Except as provided in any other contract, instrument, or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b), the Operating Debtors shall retain and may enforce any Claims, rights, and causes of action, including rights and causes of action arising under the Bankruptcy Code which are commenced prior to the closing of the Reorganization Case, that the Debtor or its estate may hold against any Person. Only the Operating Debtors or its successor(s) may pursue

such retained Claims, rights or causes of action, as appropriate, in accordance with the best interests of the Operating Debtors or its successor(s).

10.5    The Confirmation Order shall be deemed to constitute an order of the Bankruptcy Court, as is authorized under Bankruptcy Code § 502(d), disallowing any Claim of any entity: (i) from which property is recoverable under Bankruptcy Code §§ 542, 543, 550, or 553 or (ii) that is a transferee of a transfer avoidable under Bankruptcy Code §§ 544, 545, 547, 548 or 549, unless such entity or transferee has paid the amount or turned over any such property, for which such entity or transferee is liable under Bankruptcy Code §§ 542, 543, 550, or 553.

10.6    The obligations of the Operating Debtors to indemnify their employees, representatives and others, applicable statues in respect of all actions, suits and proceedings against any of such agents, employees, representatives and others, based upon any act or omissions related to service with or for or behalf of the Operating Debtors, except for willful conduct or gross negligence of the respective agents, employees, representatives and others, whether currently or formerly with the Operating Debtors, shall be discharged by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Operating Debtors regardless of such confirmation, consummation and reorganization.

10.7    To the extent allowed by applicable law, if the respective representatives, attorneys, accountants, financial advisors, and agents of the Operating Debtors act in good faith, they shall not be liable to any holder of a Claim or equity interest, or any other party with respect to any action, forbearance from action, decision, or exercise of

discretion taken during the period from the Petition Date to the Effective Date in connection with (a) the operation of the Operating Debtors; (b) the proposal or implementation of any of the transactions provided for, or contemplated in, the Plan; or (c) the administration of the Plan or the distribution to be made pursuant to the Plan; other than for gross negligence, willful misconduct, breach of fiduciary duty, criminal conduct, ultra vires actions, or the disclosure of confidential information that causes damages. The Operating Debtors, and their respective representatives, attorneys, accountants, financial advisors, and agents, may rely on the opinions of counsel, certified public accountants, and other experts or professionals employed by the Operating Debtors, and such reliance shall conclusively establish good faith.

10.8    Nothing in the Plan or the Confirmation order shall enjoin the United States Government or any of its agencies, or any state or local authorities from bringing any claim, suit, action or other proceedings (whether directly, indirectly, derivatively or otherwise) against the Operating Debtors, or the Operating Debtors' officers, directors, members, employees, attorneys, advisors, agents, representatives and assigns, or the Operating Debtors' property, for any liability, including under the securities laws, the environmental laws or any criminal laws of the United States or any state or local authority. In addition, the exculpation provided for in the Plan shall not release any attorney from any obligations for malpractice owed to clients under rule 1.8(h) of the New York State Rules of Professional Conduct.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    The Court shall retain and have exclusive jurisdiction over the Chapter 11 case for the following purposes:

a.       to determine any and all objections to the allowance of Claims;

b.       to determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtors are a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

c.       to determine any and all applications, adversary proceedings, and contested or litigated matters, to set aside liens or encumbrances and to recover any preferences, transfers, assets or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

d.       to consider any modifications of the Plan, any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code or other applicable law;

e.       to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation) of the Plan, including disputes between or among classes of claimants under the Plan regarding allocations or payments of distribution hereunder;

f.      to consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtors or the Debtors' estate;

g.      to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan, including, but not limited to, extending deadlines and time limits provided in the Plan and to implement the transfer of the fee simple interest in the Premises to Debtors.

h.      to fix the allowance of compensation of professionals.

## ARTICLE XII

## **GENERAL PROVISIONS**

12.01   **Definitions and Rules of Construction.**      The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

12.02   **Effective Date of Plan.**      The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. Further, however, if the fourteenth day falls on a weekend or National holiday, the next business day shall be the Effective Date if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

12.03   **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

12.04   **Binding Effect.**      The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

12.05   **Captions.**      The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

12.06   **Corporate Governance.**      The Debtors, pursuant to Section 1123(a)(6) of the Bankruptcy Code, shall:

> provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation referred to in paragraph (5)(B) or (5)(C)  of this subsection, a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

12.07   **Final Decree.**      Pursuant to Local Bankruptcy Rule 3022-1, within fourteen (14) days following the full administration of the estate, the Operating Debtors or the Reorganized Debtor shall file, on notice to the United States Trustee, an application and a proposed order for a final decree closing this case.

12.08   **Post-Confirmation Reports.**      The Operating Debtors shall be required to file quarterly post-confirmation status reports until the case is closed, converted, or dismissed, whichever happens earlier.

## ARTICLE XIII

## NOTICES

13.1     Any notice described in or required by this Plan shall be deemed to have been properly given when mailed by U.S. Mail, return receipt requested, if sent to the following address:

a)       The Debtors, addressed to:

Jeff D. Grodinsky
4 Tomkins Court
Commack, New York 11725

b)       with a copy to counsel for the Debtors:

The Law Offices of Kenneth A. Reynolds, Esq., P.C.
105 Maxess Road, Suite 124
Melville, New York 11747
Attention: Kenneth A. Reynolds, Esq.

## ARTICLE XIV

## MEANS FOR IMPLEMENTATION OF THE PLAN

14.1     (a) The Plan is to be implemented in a manner consistent with Section 1123(a)(5) of the Bankruptcy Code.

(b) The funds required for the confirmation and performance of this Plan shall be provided from revenues derived from Operating Debtors' business operations.

## ARTICLE XV

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

(a)       **Time Limit for Objections to Claims**.

(i) Objections to Claims shall be filed by the Debtors with the Court and served upon each holder of each of the Claims to which objections are made, not later than sixty

(60) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court.

(b)     **Resolution of Disputed Claims**.

(i) Unless otherwise ordered by the Court, the Debtors shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest.

(ii) On and after the Effective Date, no distributions shall be made by the Operating Debtors to the holders of Disputed Claims. At the time of any distribution under the Plan, the Operating Debtors shall reserve and shall not distribute cash equal to the amount that the holders of Disputed Claims at the time of such distribution would have received had the Disputed Claims been Allowed Claims. After the Bankruptcy Court has determined all Disputed Claims, the remaining reserved amount, if any, in excess of the amount necessary to satisfy the Allowed amount of all Disputed Claims shall be distributed in accordance with the provisions of the Plan.

(iii) At such time as a Disputed Claim becomes an Allowed Claim, the amount that would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be distributed by the Debtor, without interest, to the holder of such Allowed Claim within thirty (30) days after the Disputed Claim becomes an Allowed Claim pursuant to Final order of the Bankruptcy Court.

(c)     **Payments**.

(i) Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Creditors to which the respective holder of an Allowed Claim

belongs unless otherwise ordered by the Court. Such payments and distributions shall be made as soon as practicable after the date that the Court entered a Final Order allowing such Claim. Payments made in accordance with this Article shall not include the interest on the amount of such payment from the date on which the holder of the Allowed Claim would have been entitled to receive payment if its Claim had not been a Disputed Claim. Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtors and such Claimant.

## ARTICLE XVI

## EVENT OF DEFAULT

16.1    The occurrence of any of the following shall constitute a default by the Debtor:

(i) The failure of the Operating Debtors to make any payment when due under the Plan, which failure shall have been uncured for a period of thirty (30) days after the Operating Debtors' receipt of written notice thereof unless such payment has been extended in accordance with the provisions of the Plan; and

(ii) The failure of the Operating Debtors to comply with any of the covenants contained in the Plan, except for default in payment as provided in Article IV, which failure shall remain uncured for a period of thirty (30) days after the Operating Debtors have received written notice of such failure.

(iii) The entry of a decree or order for relief with respect to the Operating Debtors by a Court of competent jurisdiction in an involuntary case under the

federal bankruptcy laws, as now or hereafter constituted, or under any other applicable federal or state bankruptcy, insolvency or similar law.

(iv) The appointment of a receiver, liquidator, assignee, custodian, trustee or other similar official for all or any substantial part of the property of the Operating Debtors, existing on the date of such appointment, and the continuance of any such decree, order or appointment unstayed and in effect for a period of sixty (60) days.

(v) The commencement by the Operating Debtors of a voluntary case under federal bankruptcy laws, as now constituted or, hereinafter amended, or any other applicable federal or state bankruptcy, insolvency or other similar law, or the making by the Operating Debtors of any assignment for the benefit of creditors.

(vi) The entry of a judgment by a court of competent jurisdiction' against the Operating Debtors and the scheduling of a sale of any substantial part of its assets, existing on the date of the entry of such judgment, pursuant to any formal legal proceeding instituted against the Operating Debtors, and the Operating Debtors shall not have discharged, vacated or stayed the judgment within at least forty five (45) business days before the date scheduled for such sale.

Dated: Jericho, New York
April 9, 2019

**CORTLAND HABITATS, INC.**
**COLLEGE HILL REALTY, LLC**
Debtors and Debtors-in-Possession


By:    */s/ Jeff D. Grodinsky*
        Jeff D. Grodinsky, Sole Shareholder